UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60006-STRAUSS

**MARCELO TAROCO,** *et al.***,**

    Plaintiffs,

v.

**M&M CHOW, LLC,**

    Defendant.
_____/

## **ORDER**

THIS MATTER came before the Court upon the Joint Motion to Approve Settlement and Joint Stipulation for Dismissal with Prejudice ("Motion") [DE 36]. The Court held a hearing on the Motion on July 26, 2021 and took the matter under advisement.

Plaintiffs, Marcelo Taroco ("Taroco") and Francisco Duran ("Duran"), commenced this action under the Fair Labor Standards Act ("FLSA") on January 4, 2021 [DE 1]. The following day, they filed an Amended Complaint [DE 4] alleging claims for unpaid overtime under the FLSA and for unpaid minimum wages under the Florida Minimum Wage Act ("FMWA"). Plaintiffs subsequently filed Plaintiffs' Statement of Claims [DE 14] ("Initial SOC"). Therein, Taroco asserted that he is owed $32,943 for unpaid overtime under the FLSA ($65,886 with liquidated damages) and $2,778 for unpaid minimum wages under the FMWA ($5,556 with liquidated damages). Duran only asserted that he is owed unpaid overtime (and not unpaid minimum wages) in the amount of $7,800 ($15,600 with liquidated damages). However, he subsequently filed Plaintiff Francisco Duran's Amended Statement of Claim [DE 21] ("Amended SOC") asserting

that he is owed unpaid overtime in the amount of $45,312 ($90,624 with liquidated damages). As in the Initial SOC, Duran did not assert in the Amended SOC that he is owed any unpaid minimum wages.

On June 30, 2021, the parties notified the Court that they reached a settlement [DE 34]. Therefore, the Court entered the Order Requiring Submission of Settlement Agreement for Court Approval [DE 35], which stated, *inter alia*, the following:

> The parties to an FLSA suit may settle that suit only under one of the following two circumstances: (1) where the settlement is supervised by the Secretary of Labor, pursuant to 29 U.S.C. § 216(c); or (2) where a district court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). Before a district court may approve an FLSA settlement, however, it must scrutinize the settlement agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *See id.* at 1354-55. Additionally, where a settlement must be approved by the Court, the settlement becomes a part of the judicial record, and therefore, may not be deemed confidential even if the parties so consent. *See, e.g.*, *Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002). Thus, the parties are instructed **not** to submit their settlement agreement under seal.

The parties subsequently filed the Motion [DE 36], seeking approval of the settlement of their FLSA claims. They attached two separate agreements to the Motion, one for each Plaintiff. The recital section of both agreements indicates that the terms and conditions "constitute full settlement of any and all disputes between" the parties. Under section 2 of the Duran agreement [DE 36-1], Defendant agreed to pay $1,250 "in full satisfaction of any and all claims [Duran] has or may have, known or unknown, for unpaid wages or overtime." Defendant also agreed to pay $1,250 in liquidated damages and $2,500 in attorneys' fees and costs. Under section 2 of the Taroco agreement [DE 36-2], Defendant agreed to pay $1,875 "in full satisfaction of any and all claims [Taroco] has or may have, known or unknown, for unpaid wages or overtime." Defendant also agreed to pay $1,875 in liquidated damages and $2,500 in attorneys' fees and costs. Under section 5 of each agreement, each Plaintiff agreed to release Defendant and others from claims

Plaintiffs have or may have against the released parties "for unpaid wages under any federal, state or local law, including, but not limited to, any claims relating to [Plaintiffs'] claim[s] in the Litigation . . ." The release provision states that it shall be "construed as broadly as possible," and it specifies that it includes both FLSA claims and FMWA claims.

As the foregoing makes clear, the agreements attached to the Motion unequivocally indicate that they resolve all of the claims in this case including those under the FLSA and FMWA. However, the merger provision of each agreement (paragraph 9) – which is almost always a simple boilerplate provision – refers to a "separate Confidential Settlement Agreement and General Release." Yet, the Motion contained no reference to, or explanation regarding, any such separate agreements. Therefore, the Court entered an Order [DE 38] requiring the parties to file a supplement to the Motion including the separate agreements or clarifying why the agreements were not filed with the Motion notwithstanding the Order Requiring Submission of Settlement Agreement for Court Approval [DE 35].

In response to the Court's Order requiring a supplement, the parties filed the Supplement to Joint Motion to Approve Settlement [DE 39]. Therein, they explained that they entered into a separate agreement, for which Plaintiffs received separate consideration, to resolve Plaintiffs' claims under the FMWA and for Defendant to obtain a general release from Plaintiffs to resolve any other claims that Plaintiffs may assert against Defendant (such as a retaliation claim). The parties also explained that Defendants wanted to obtain a confidentiality provision regarding Plaintiffs' employment. Additionally, the parties argued that the separate confidential agreement "has no bearing on the compromise *of the FLSA claim*." [DE 39] ¶ 16. They also cited some cases where courts (mainly from the Middle District of Florida) have approved the use of separate FLSA

and non-FLSA agreements (or other similar exceptions), with only the FLSA agreement being filed and scrutinized. *Id.* ¶¶ 17-21.

For instance, in one case, the court stated that because *Lynn's Foods* only requires courts to review the fairness of FLSA back wage and liquidated damage claims, "the Court does not need to review the parties' settlement of Plaintiff's other claims, provided its terms do not serve to contaminate the Agreement as to the FLSA claim." *Yost v. Wyndham Vacation Resorts, Inc.*, No. 6:10-CV-1583-ORL-36, 2012 WL 1165598, at *3 (M.D. Fla. Mar. 26, 2012), *report and recommendation adopted*, 2012 WL 1165468 (M.D. Fla. Apr. 9, 2012) (citing *Coleman v. The Golf Channel, Inc.,* No. 6:09–cv–1254–Orl–DAB (M.D. Fla. May 20, 2010)).[1] Similarly, other Middle District cases have blessed this second agreement concept provided that one agreement does not "affect" the other (using "affect" rather than "contaminate"). *See, e.g.*, *Roman v. Lopez*, No. 6:18-CV-621-ORL-41LRH, 2020 WL 1650596, at *4 (M.D. Fla. Mar. 31, 2020), *report and recommendation adopted*, 2020 WL 1669251 (M.D. Fla. Apr. 3, 2020). However, other Middle District cases have raised concerns regarding this separate agreement approach, especially when the second agreement resolves claims that are not actively being pursued. *See Mathis v. Metro Corral Partners, Inc.*, No. 6:14-CV-429-ORL-41TBS, 2014 WL 12872832, at *1-3 (M.D. Fla. Aug. 6, 2014). *See also Wilburn v. Paradise Lawns & Landscaping, Inc.*, No. 6:14-CV-1557-ORL-37TBS, 2015 WL 13793352, at *1-4 (M.D. Fla. Feb. 13, 2015), *report and recommendation*

---

[1] The order in *Coleman* merely includes a footnote stating that "[a]s the parties correctly note, Court approval is unnecessary with respect to the settlement terms for the other claims in the suit, so long as they do not serve to contaminate the agreement with respect to the FLSA claim." It is unclear upon what authority *Coleman* relied and whether other Middle District cases preceding *Coleman* permitted the use of separate FLSA and non-FLSA agreements (where only the FLSA agreement was filed and scrutinized).

*adopted*, 2015 WL 13793264 (M.D. Fla. Feb. 19, 2015) (raising concerns but ultimately approving settlement).

This separate settlement agreement practice appears to be largely limited to the Middle District of Florida. The parties did cite one decision from this district (not dealing with this precise separate settlement issue), but it only underscores the problems with what the parties are seeking to do here.[2] *See Hernandez v. Iron Container, LLC*, No. 13-22170-CIV, 2014 WL 633848, at *1-2 (S.D. Fla. Feb. 18, 2014). In *Hernandez*, the court permitted the parties to dismiss the case (a retaliatory discharge lawsuit) without court approval based on the "unique circumstances." *Id.* at *1. However, there were no wage claims brought in the case because the parties had already settled wage claims in an earlier case before the retaliation lawsuit was even filed. *See id.* at *1-2. In finding that it did not have to scrutinize the parties' settlement for fairness, the court made clear that the settlement did not "contaminate" or "affect" the FLSA wage claim (which, again, had been resolved before the retaliation claim even existed). *Id.* at *2.

In this case, however, the parties' confidential non-FLSA settlement agreements (one for each Plaintiff) clearly affect or contaminate the FLSA settlements – contrary to the parties' representation that the separate confidential agreement "has no bearing on the compromise *of the*

---

[2] Following the hearing, the parties also emailed my chambers (at my direction) a list of eight cases in this district where they contend that the court approved the submission of separate FLSA and non-FLSA settlement agreements (or other relief such as redaction of non-FLSA information). I have reviewed these cases (except for one where the parties appear to have provided an incorrect case number). None of the cases include any analysis of the separate settlement agreement issue. Regardless, most or all of the cases appear to be distinguishable. For instance, several of them involved the use of a separate agreement to resolve claims under the Family Medical Leave Act. Another involved a separate agreement to address an FLSA retaliation claim, and one involved a situation where the plaintiff received 100% of back wages and liquidated damages. Unlike these cases, here, the parties seek to enter into separate agreements on unpaid overtime and unpaid minimum wages, even though these issues are interrelated.

5

*FLSA claim*." [DE 39] ¶ 16.[3]  For starters, the non-FLSA agreements provide that they will be null and void if this Court does not approve the FLSA settlements.  Clearly, then, one set of agreements affects the other set.  Even aside from this fact, to the extent that the non-FLSA agreements purport to address the FMWA claims, minimum wage and overtime claims are generally so intertwined and related that it is hard to imagine they would not have at least some effect on one another.  After all, the central issue for both claims concerns the number of hours that Plaintiffs worked.  The situation may be different if two agreements are being used to address a wage claim and a retaliation claim or some other factually distinct claim. But even if separate agreements may be acceptable in such a situation, this type of situation is clearly distinguishable.  Moreover, no retaliation claim was pursued here, *cf. Mathis*, 2014 WL 12872832, at *1-3, and at the hearing, the parties only described one occasion on which a vague threat of a retaliation claim was made.  No details regarding the propriety of any such retaliation claims have been provided though.  Thus, it does not appear that the non-FLSA agreements are aimed at resolving an articulated or anticipated claim that is so distinct from the FLSA claims that it fits the reasoning of the cases the parties have cited.

There is also reason to doubt that the non-FLSA agreements are actually aimed at resolving the FMWA claims.  As described above, the release provisions of the FLSA agreements refer to both the FLSA and the FMWA, suggesting that the need to resolve the FMWA claims through the non-FLSA agreements is illusory.  While there is language in the non-FLSA agreements that purports to distinguish Plaintiffs' FLSA claims (which those agreements define as the "Wage Claim") from the FMWA claims and suggests that the filed FLSA agreements only address the

---

[3] The non-FLSA settlement agreements have not been filed on the docket at this time.  However, the parties submitted them for an *in-camera* review prior to the July 26, 2021 hearing.  *See* [DE 40].

6

"Wage Claim," there is other language that suggests that the FLSA agreements resolve the FMWA claims as well.  For example, the non-FLSA agreements indicate that the consideration being paid pursuant to those agreements is to cover damages "not arising out of FLSA **or other wage law**," suggesting that none of the consideration paid in the non-FLSA agreements is actually directed toward resolving the FMWA claims.  It is also suspect that the parties allocate the substantial majority of the funds (between the two agreements) to the non-FLSA agreements when the Statements of Claim so clearly value the FLSA claims at a much greater proportion.  In other words, it appears that none of the consideration being paid under the non-FLSA agreements actually applies to the FMWA claims or any other claims that have actually been brought against Defendant.  This suggests that the parties are using the non-FLSA agreements to avoid public disclosure of amounts that are in reality being paid as consideration for Plaintiffs' FLSA claims.  In fact, the parties made clear at the hearing that Plaintiffs do not care how the money is allocated as long as they receive the collective sums under both sets of settlement agreements.  However, permitting the parties to disguise amounts attributable to the FLSA claims would run counter to at least one purpose of the FLSA.  *See Jacome v. Ricoh Latin Am., Inc.*, No. 19-CIV-61004-RAR, 2019 WL 10058937, at *2 (S.D. Fla. Aug. 20, 2019) ("A proposed FLSA settlement agreement may also be rejected as 'unreasonable' if it contains a confidentiality provision because it 'both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.'" (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242-43 (M.D. Fla. 2010))).

       At the hearing, the parties suggested that the consideration to be paid pursuant to the non-FLSA agreements was largely in exchange for terms that Defendant strongly coveted, including a broad general release of potential claims, a non-disparagement clause, and certain confidentiality

arrangements.  However, the Court cannot accept that the bargain for those terms is truly unrelated to, and does not "affect" or "contaminate," the FLSA agreements.  Courts frequently scrutinize general release provisions in considering the overall fairness of FLSA settlements.  *See, e.g., Pollarolo v. Gab Call Ctr. Solucions, LLC*, No. 18-80300-CIV, 2018 WL 11318144, at *2 (S.D. Fla. Apr. 18, 2018).  Thus, the general release provision and other provisions of the non-FLSA agreements are not truly separate from the FLSA agreements, which resolve the only claims that have been brought in this case.  Allowing the parties to carve out the general release provision and other provisions under the guise of resolving separate, unrelated claims – particularly when no such other claims have been brought or have progressed beyond hypothetical contemplation – would have the effect of creating an end-run around the type of scrutiny that courts regularly undertake in FLSA cases.  The Court understands and appreciates that the parties have worked hard to reach a resolution.  The Court also understands and appreciates Defendant's desire for some of the terms of the non-FLSA agreements and recognizes that some of those terms may be reasonable (particularly if the parties can articulate exactly what consideration is directed toward which provisions).  However, the Court cannot allow the parties to shield the true FLSA amounts being paid from the public record nor pretend that the other bargained-for terms are truly separate from the resolution of Plaintiffs' FLSA claims.

      Separate and apart from the issue of the non-FLSA agreements not being publicly filed as part of the Court's fairness inquiry, assuming that the consideration allocated to the bargain in the non-FLSA agreements is truly not for resolution of Plaintiffs' FLSA claims, then Plaintiffs are receiving pennies on the dollar with respect to what they claim to be owed for their FLSA claims.  This is concerning (notwithstanding Defendant's position that Plaintiffs are owed little if anything on their FLSA claims).  As discussed above, most of what Plaintiffs state they are owed relates to

their FLSA overtime claims.  Again, Duran claims that he is owed $90,624 in unpaid overtime and related liquidated damages, but he would only receive $2,500 under the FLSA agreement.  In other words, Duran is agreeing to receive less than 3% of what he claims he is owed for his FLSA overtime claim.  Without substantially more information, and an acknowledgement (and detailed, supporting explanation) by Duran and his counsel that Duran has little chance of recovering anything close to the $90,624 figure in the Amended SOC, the Court cannot find the FLSA settlement to be fair with respect to Duran.  The same is true for Taroco, who will only receive $3,750 under the FLSA agreement even though he claims to be owed $65,886 (including liquidated damages).  In other words, Taroco would only be receiving 6% of what he claims to be owed for overtime under the FLSA.  Accordingly, even if the Court were to ignore the non-FLSA agreements and solely evaluate the fairness of the FLSA agreements as if no other agreements existed, the Court cannot find them to be fair without substantially more information.

For the foregoing reasons, it is **ORDERED** and **ADJUDGED** that the Motion [DE 36] is **DENIED without prejudice**.  The parties shall file a renewed motion for approval of settlement or motion to reopen the case by **August 9, 2021**.  In any renewed motion, the parties shall include a single agreement that addresses all of the claims that were brought in this case and that explains which settlement funds pertain to which claim/provision.  Plaintiffs shall thoroughly address – in the renewed motion – the fairness of the FLSA settlements in light of any significant discrepancy between the amounts in Plaintiffs' statements of claim and amounts allocated towards settling those claims.  In doing so, Plaintiffs' counsel should provide an affidavit containing his opinion regarding the resolution of the FLSA portion of the settlement, with supporting facts and details.  To the extent that Plaintiffs believe the numbers in their respective statements of claim are no longer accurate, in the event that the parties choose not to seek approval of a new settlement

agreement and instead choose to reopen the case, Plaintiffs shall amend their statements of claim and set forth the numbers and calculations they believe to be accurate.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 28th day of July 2021.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge